THE CHICAGO SASH, DOOR & BLIND MFG. CO.,

v.

ELIZABETH J. SHAW.

*Mechanics' Liens—Secs. 29, 30, 33, 35, Chap. 82, R. S.*

A person can not lawfully make payments to a contractor or his order, without a sworn statement, to the injury of a sub-contractor, and against the express prohibition of the statute concerning mechanics' liens.

[Opinion filed May 20, 1892.]

IN ERROR to the Circuit Court of Lee County; the Hon. JOHN D. CRABTREE, Judge, presiding.

Messrs. R. S. FARRAND and R. D. HUSZAGH, for plaintiff in error.

Mr. SHERWOOD DIXON, for defendant in error.

CARTWRIGHT, J.   Plaintiff in error filed its petition to establish a mechanic's lien as sub-contractor, on the property of defendant in error in Dixon, Illinois.   A hearing resulted in the dismissal of the petition for want of equity.

The material facts, as shown by the pleadings and evidence, are as follows:   Defendant in error was the owner of two lots in the city of Dixon, and on May 15, 1889, entered into a contract with William C. Schmidt for the erection of a dwelling house thereon, at the agreed price of $4,750.   In pursuance of this contract Schmidt entered into a contract with plaintiff in error to furnish certain mill work for the house for the sum of $675.

Plaintiff in error commenced delivering material as subcontractor under its agreement, August 23, 1889, and fully performed its contract, and also by agreement furnished some extra material and labor amounting to $76.20, and finally completed the last work under such agreements October 15, 1889.   Notice was served on defendant in error, as required by the statute, October 23, 1889.   A statement was filed with the clerk of the Circuit Court December 23, 1889, and the suit was commenced January 3, 1890.

During the building of the house, defendant in error, when about to make payment to Schmidt, the original contractor, took from him two sworn statements as provided by the lien law then in force, one on July 6, 1889, showing due or to become due to sub-contractors, mechanics or workmen, $300.01, and the other August 3, 1889, showing due or to become due $1,190.02, making in all the sum of $1,490.03. No further statements were taken or required, but after the date of the last sworn statement, defendant in error paid from time to time, as the work progressed, orders given by Schmidt to sub-contractors, material-men and laborers, which, together with some small payment to Schmidt and similar orders which she had accepted, amounted to the entire contract price for the erection of the house.   These payments had been made and orders accepted before the notice was

served by plaintiff in error, October 23, 1889. No notices were served by any other sub-contractor besides plaintiff in error, except by one Kelley, who received $135.16 in full of his claim.

Plaintiff in error complied with each provision of the statute required to be observed by it in order to entitle it to a lien. Nothing required by statute was left undone on its part, and it claims a lien for $751.20. On the part of plaintiff in error it is claimed that the sums paid out by defendant in error, above the amount shown by the two sworn statements, were paid to the original contractor or to his order, in violation of its rights and interests; that its right to a lien is not affected thereby, and that to the extent of its claim they can not be considered or claimed as payments upon the contract price.

Defendant in error contends that she was not bound by law to demand any statement from the contractor, and that inasmuch as she had paid the full contract price to the original contractor, or upon his order, or by accepting orders to be paid by her before a notice was served upon her by plaintiff in error, and was not then indebted to Schmidt, and did not afterward become indebted to him, the plaintiff in error acquired no right to a lien.

The sections of Chapter 82, Revised Statutes, as amended and in force July 1, 1887, necessary to be considered in the determination of this question, provide as follows: Sec. 29 provides that every sub-contractor shall have a lien for the value of labor and material furnished, but the aggregate of all liens shall not exceed the original contract price, and the owner shall not in any case be compelled to pay a greater sum than such contract price, unless payments be made to the original contractor or to his order in violation of the rights and interest of the persons intended to be benefited by Sec. 35 of the act, and except in case of a fraudulently low price. Sec. 30 provides for the giving of notice by the sub-contractor, and that such notice shall not be necessary where the sworn statement of the contractor provided for in Sec. 35 shall serve to give the owner true notice of the amount

Chicago Sash, Door & Blind Mfg. Co. v. Shaw.

due, and to whom due.    Sec. 33 provides that no claim of a sub-contractor shall be a lien under Sec. 29, except so far as the owner may be indebted to the contractor at the time of giving such notice as aforesaid of such claim, or may become indebted afterward to him as such contractor.    Sec. 35, referred to as above, provides that the original contractor shall, whenever any payment of money shall become due from the owner, or whenever he desires to draw any money from the owner on such contract, make out and give to the owner a statement under oath  of the name of every sub-contractor, giving the terms of the contract and how much, if anything, is due or to become due to them, and the owner shall retain out of any money then due or to become due to the contractor an amount sufficient to pay all demands that are due or to become due such sub-contractors as shown by the contractors' statement, and pay the same to them according to their respective rights, and all payments so made shall, as between such owner and contractor, be considered the same as if paid to such original contractor.    It further provides that until such statement is made, the contractor shall have no right of action or lien against the owner on account of such contract, and any payment made by the owner before such statement is made, or without retaining sufficient money, if that amount be due, or is to become due, to pay the sub-contractors as shown by the statement, shall be considered illegal and made in violation of the rights of the persons intended to be benefited by the act, and the rights of such sub-contractor to a lien shall not be affected thereby.

It is contended on the part of defendant in error that it was wholly unnecessary for her to take the sworn statements she did take, and that she was not bound to demand any statement upon making a payment to the contractor or his order, but that she might require such statement, or not, at her pleasure.    And it is said that the case of Butler & McCracken v. Gain, 128 Ill. 23, sustained this contention. We do not so understand that decision.    The expressions used must be held to refer to the facts of that case, and to be applicable to like conditions only.    It can not be contended

that the legislature designed that the statement should only be required as to claims of which the sub-contractor had already given notice. If notice has been served by the sub-contractor, the statement is useless both to him and the owner, for he is already secured and the owner already has the requisite information. In that view of the statute, it would be a pertinent query in what way the legislature designed that the sub-contractor should be " benefited " by the statute if he must first make himself secure before the benefit is bestowed upon him. In the case above referred to, Butler & McCracken claimed a lien but had never given notice, and the owner had received no notice by any statement. The claim of a lien was founded only upon the fact of furnishing material, and the owner's neglecting to take the sworn statement; and it was held that the right to a lien can not be based merely on an omission, but that Sec. 35 was only intended to protect persons who complied with the provisions of the statute so as to be otherwise entitled to enforce the right to a lien. The only point in that case was that Butler & McCracken not having taken the necessary steps to perfect their lien, were not in a position to complain of the neglect to demand a sworn statement from the contractor. That case was considered by this court, and referred to in Conklin v. Plant, 34 Ill. App. 264, and was not then regarded as sustaining the claim now made by defendant in error.

The provisions for the benefit and protection of sub-contractors by requiring a sworn statement and declaring payments made before such statement illegal, were introduced into the statute in 1887 by amendment. The persons intended to be benefited by Sec. 35 are named in the section, and include sub-contractors, who are to be protected in their rights by requiring the owner to take a sworn statement intended to disclose such rights. And the section provides : "Any payment made by the owner before such statement is made, * * * shall be considered illegal and made in violation of the rights of the persons intended to be benefited by this act, and the rights of such sub-contractors,

mechanics, workmen or persons furnishing material, to a lien, shall not be affected thereby." At the time of this amendment, Sec. 33 above referred to, was not changed, and it is claimed that by reason of that section plaintiff in error could not have any lien. If this section is found to be irreconcilably inconsistent with the amendment, the latter must prevail, but the various sections should be construed together so as to give some effect to each if possible. Prior to the amendment, the original contractor could lawfully collect or order paid to others money due on his contract as rapidly as it became due, and enforce his rights by action, regardless of any claim of a sub-contractor who had not already given notice of his rights, and the owner had a right to disregard the claims of every sub-contractor who had not served notice of a lien.

It was the evident intention of the legislature to impose upon the owner, by the amendment, a duty for the benefit of such persons, by requiring a sworn statement to be taken by the owner, and providing that payments made without such statements should be regarded the same as not having been made, and as though the sums so paid were still due, so far as the right to a lien is concerned. It seems that it could not have been intended that the amount due the contractor referred to by Sec. 33, should be lessened or extinguished by taking account of such payment as the statute declared to be illegal, not affecting the right to a lien.

The rational construction of Sec. 33 would seem to be that, taking account of legal payments only, that is, such as are not made in violation of the statute, the owner shall not be liable for more than the balance due. This affords to him who obeys the law, full and ample protection in harmony with the like provision, as amended in Sec. 29, where it is provided that the owner shall not be liable for any more than the contract price, unless payments are made in violation of the act, in which event it is plainly the legislative intent that he may become liable for more than the contract price. If the owner obeys the plain provisions of the statute and takes the statement, but such statement does not serve to give him

notice, and no notice has been served by the sub-contractor, then he may make payment of the amount due, and will not be liable for any more than the contract price. This construction leaves every section of the statute to have some force. To construe the statute otherwise would defeat the object of the amendment and leave the law as it was before, making the passage of the amendment a vain and useless act.

Defendant in error could not lawfully pay to the contractor or his order, without a sworn statement, to the injury of plaintiff in error and against the express prohibition of the statute. This is the very thing that the legislature intended to protect the sub-contractor against, and defendant in error having paid to the contractor or to his order without such statement, sums far in excess of the amount due plaintiff in error, such payments were by the statute made illegal, and the right of plaintiff in error to a lien was not affected thereby.

The decree is reversed and cause remanded, with directions to enter a decree for plaintiff in error in accordance with the views herein expressed.

*Reversed and remanded with directions.*